IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| CHEVRON U.S.A., INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 09-6070-CV-SJ-HFS |
| ) | |
| 11500 MANAGER, LLC, ) | |
| GREGORY TIMM, CARY L. ) | |
| CARPENTER, ALEN VAN WHYE, ) | |
| CGTV, LLC, and ) | |
| TOOLCO REAL ESTATE, LLC, ) | |
| ) | |
| Defendants. ) | |

ORDER AND OPINION DENYING (1) PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND (2) PLAINTIFF'S APPLICATION FOR PREJUDGMENT ATTACHMENT

Pending is Plaintiff's Motion for Temporary Restraining Order. Alternatively, Plaintiff seeks a prejudgment writ of attachment. Both requests are denied.[1]

I. BACKGROUND

This case arises from a real estate transaction involving multiple entities and individuals. The TWA Administrative Building (the "TWA Building") was owned by 11500, LLC, which leased the TWA Building to 11500 Lessee, LLC ("Lessee"). Plaintiff owns 99.99% of Lessee, and 11500 Manager, LLC ("Manager") owns the remainder. ToolCo Real Estate, LLC ("ToolCo") (a subsidiary of the Ewing Marion Kauffman Foundation) held a mortgage on the TWA Building.

---

[1] This case was randomly assigned to the Honorable Howard F. Sachs. Judge Sachs was not available to consider the TRO, so with his assent the undersigned agreed to consider the matter. See Local Rule 83.9. The case remains with Judge Sachs for all future proceedings.

Rehabilitation of the TWA Building was going to generate historic tax credits. Plaintiff agreed to invest approximately $7.7 million to rehabilitate the TWA Building, and Lessee was to pass the tax credits to Plaintiff. Manager's obligations to Plaintiff (which need not be detailed here) were guaranteed by a constellation of individuals and entities. These same individuals and entities also own some property adjacent to the TWA Building.

11500 LLC – the owner of the TWA Building – filed for bankruptcy in the Western District of Missouri. A settlement with ToolCo was reached whereby the TWA Building and the adjacent properties would be transferred to ToolCo free and clear of all liens and encumbrances – including the lease to Lessee. ToolCo was to remit approximately $1 million to the individuals and entities other than 11500 LLC. The settlement was presented to the bankruptcy judge (the Honorable Jerry W. Venters) on July 6, 2009 for approval. Plaintiff appeared and argued it should receive the $1 million or that the money should be frozen pending litigation over its disposition (Plaintiff's actual argument is neither clear at this point nor relevant to the issues). Plaintiff's claim to the money is based on its contention that the contemplated transfer of the TWA Building would deprive it of the anticipated tax credits and constitute a breach of the contract with Manager. This was significant to Plaintiff because (1) Manager was believed to have no assets, (2) the planned recipients guaranteed the Manager's obligations, and (3) the recipients of the $1 million were believed to have no assets other than the anticipated receipt of that money.

Judge Venters declined Plaintiff's request: according to Plaintiff, Judge Venters reasoned that the money paid for property outside the bankruptcy estate to people and entities not in bankruptcy was beyond his control. Plaintiff then filed this suit, seeking to enjoin the distribution of the $1 million or for a writ of prejudgement attachment. A hearing was held later that day, at which time the Court orally denied Plaintiff's request. This written order memorializes the Court's rationale.

## II. DISCUSSION

### A. Possible Procedural Problem

During the hearing the Court expressed concern that Plaintiff's proper remedy is to appeal Judge Venters' decision and not to file a separate lawsuit. The Court understands Plaintiff's rationale – that an appeal is inappropriate because the matter falls outside the bankruptcy court's purview. However, that rationale comes from Judge Venters' decision – meaning Plaintiff's recourse may be to appeal that decision. The Court confesses to not being certain on this point, but there is no need to resolve it at this juncture. There are other, more obvious reasons to deny Plaintiff's requests, so the Court will pass on this matter for now.

### B. Notice

Plaintiff made its request for extraordinary relief without notifying Defendants. A TRO may be issued without notice if "specific facts . . . clearly show the immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and the movant's attorney "certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

Plaintiff, with commendable candor, admitted preparations for the lawsuit occurred over the preceding weekend – before the hearing in front of Judge Venters. Indeed, the wording of Plaintiff's filings describe the bankruptcy hearing as a future event and not *a fait accompli*. The timing of events and Judge Venters' hearing combined to provide ample opportunity to advise Defendants of Plaintiff's plan to file this suit and seek relief before the anticipated sale on July 7. Indeed, Plaintiff could have told Defendants of its plan to file this suit the moment the hearing in front of Judge Venters ended. Plaintiff contends it did not do so because it was concerned the guarantors would attempt to hide the money from the sale. However, the sale was not

3

to occur until July 7 – so there was no way for the money to be hidden on July 6. Finally, Plaintiff's explanation is not based on "specific facts" as required by the rule. Plaintiff generally avers it expects difficulty collecting the money on its contract claims, and generally avers a concern that Defendants might squirrel the money away and make it hard to find – but these general concerns are conclusory and have not been supported by specific facts.

The analysis does not change for Plaintiff's alternative request for relief. A prejudgment attachment may be obtained in circumstances permitted by state law. Fed. R. Civ. P. 64(a). In Missouri, attachments are governed by section 521.010 of the Revised Missouri Statutes, which sets forth grounds for attachment. Plaintiff justifies its request because (1) the entity Defendants have chief offices or places of business outside the state, (2) the individual Defendants are not residents of Missouri, or (3) Defendants are about to "fraudulently . . . convey or assign [their] property or effects, so as to hinder or delay . . . creditors." However, there is no right to a prejudgment attachment, and such a remedies "are not favored, principally because they are subject to a constitutional attack on due process grounds." State ex rel. Belle Starr Saloon, Inc. v. Patterson, 659 S.W.2d 789, 791 (Mo. Ct. App. 1983). This is particularly the case when (as here) the relief is sought *ex parte*. Plaintiff's unjustified failure to notify Defendants of the hearing causes the Court to believe a prejudgment attachment should not issue.

### C. Requirements for a TRO

The standard for issuing a TRO involves consideration of the following factors: (1) the threat of irreparable harm to the movant; (2) the probability that the movant will succeed on the merits; (3) the state of the balance between the plaintiff's harm and the injury that granting the injunction will inflict on other parties litigant; and (4) the public interest. Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc).

The first two factors are somewhat related in this case. Plaintiff's theory is that its contract with Manager will be breached, but Manager lacks the assets to pay the damages Plaintiff will incur. They would then turn to the guarantors to pay the obligation, but predict the guarantors (1) will not honor the obligation, (2) will not have sufficient assets to pay the obligation, and (3) will attempt to hide the $1 million received from ToolCo. Assuming this is irreparable harm (which the Court doubts), and assuming for the sake of argument that the contract with Manager will be breached, Plaintiff has offered only speculation to substantiate the perceived threat of irreparable harm. Plaintiff concedes it does not know the guarantors' financial positions (and it is reasonable to presume the guaranties were sought because there were assets to support them). Nothing confirms Plaintiff's fears that the guarantors will disavow their obligations or hide assets to avoid them, so the Court cannot find Plaintiff faces a threat of irreparable harm.

The balance of harms does not favor Plaintiff. Plaintiff could have acted much sooner to protect its interests. It characterizes the impending transfer to ToolCo as the initial breach, but in reality the contract with Manager was probably breached when Manager filed for bankruptcy. Moreover, while Plaintiff technically does not seek to interfere with the transfer to ToolCo, the reality is that Plaintiff has named ToolCo as a defendant and its efforts undeniably are related to that transaction. It is theoretically possible that ToolCo – despite having spent significant time in negotiations – may elect to rescind the deal and simply foreclose on the TWA Building. This creates burdens on 11500 LLC – a nonparty to this action. Imposing obligations on ToolCo is also a hardship; even though it has no real stake in where the money goes, ToolCo undoubtedly does not wish to be involved in extraneous litigation.[2]

---

[2]There is also some question as to whether Rule 65 authorizes the relief sought. See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999). There, a district court found a defendant to be "at risk of insolvency if not already insolvent" and enjoined the defendant from transferring or expending its assets. 527 U.S. at 312-13. The Court held the injunction was not authorized by Rule 65 because an unsecured creditor has no rights in property prior to judgment, and observed "[t]he remedy sought here could render Federal Rule of Civil Procedure 64,

## D. Requirements for Attachment

As Judge Sachs stated in an unpublished opinion, "[t]he ordinary rule is that persons who have claims against businesses that are or become financially at risk take their chances with other creditors during litigation and, at worse, are entitled to their shares in bankruptcy. The exceptions to the rule generally relate to the court's power to prevent transfers, without adequate consideration, which seriously endanger payment." Independent Federation of Flight Attendants v. Trans World Airlines, 1990 WL 80689 (W.D. Mo. 1990). Plaintiff speculates Defendants are going to fraudulently convey, assign or hide their property, but has presented the Court with nothing to justify such a finding.

This leaves, then, Defendant's status as "non-Missourians" as the sole grounds justifying prejudgment attachment. However, Plaintiff concedes "the deadline for repurchase has not yet passed," Doc. # 4 at 11, so the attachment cannot be premised on Defendants' residence. Mo. Rev. Stat. § 521.020.

## III. CONCLUSION

For these reasons, Plaintiff's request for a temporary restraining order or prejudgment attachment (Doc. # 3) is denied.
IT IS SO ORDERED.

|  |  |
|---|---|
| DATE: July 7, 2009 | /s/ Ortrie D. Smith<br>ORTRIE D. SMITH, JUDGE<br>UNITED STATES DISTRICT COURT |

---

which authorizes use of state prejudgment remedies, a virtual irrelevance. Id. at 330. In light of Plaintiff's alternative request for relief, there is no need to rest the Court's decision on Grupo Mexicano.